SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## State v. Marcus S. Mackroy-Davis (A-43-21) (086626)

**Argued April 26, 2022 -- Decided June 27, 2022**

**RABNER, C.J., writing for a unanimous Court.**

This appeal poses a narrow question: whether a particular defendant's statutory right to a speedy trial was violated. The issue, though, raises broader concerns linked to the COVID-19 pandemic.

Defendant Marcus Mackroy-Davis was arrested on November 11, 2019 in connection with a drive-by shooting in which one person was killed. A complaint against Mackroy-Davis charged him with conspiracy to commit murder, and the State moved to detain him pending trial. After a hearing, the trial court found there was probable cause that defendant committed the charged offense and that he had failed to rebut the presumption of detention that offense carries. The court entered an order of detention on December 23, 2019. On February 13, 2020, a grand jury returned an indictment charging Mackroy-Davis with murder, conspiracy to commit murder, and obstruction. Defendant maintains his innocence and has stated he intends to go to trial. At the time of oral argument, his trial had not yet begun. Defendant asserts the delays violate his rights under the Criminal Justice Reform Act (CJRA), and he maintains he is entitled to be released from pretrial detention.

The COVID-19 pandemic has had an enormous effect on society since March 2020 and has affected the justice system as well. For the criminal justice system in particular, the consequences of the pandemic have been substantial. Consistent with guidance from public health officials, the Judiciary for more than a year was unable to summon jurors, witnesses, lawyers, court staff, and the parties for in-person jury trials. As a result, the Court on its own entered fourteen omnibus orders that tolled the clock for the start of criminal trials for a total of 461 days. Those developments inevitably led to an increase in the number of pending cases. Today there are approximately 6,000 cases in which defendants are held in custody pursuant to an order of pretrial detention as they await trial.

The CJRA replaced New Jersey's prior system of pretrial release, which relied heavily on cash bail, with a risk-based system that, for the first time, allowed judges to detain high-risk defendants pretrial. Since the Act went into effect on January 1,

1

2017, most defendants have been released pending trial subject to monitoring by pretrial services officers. For higher-risk defendants, the State can move for pretrial detention. In recent years, approximately 19 percent of defendants charged by complaint have been ordered detained. In tandem with other reform efforts, the pretrial jail population dropped from 8,899 at the start of 2016 to 4,976 at the start of 2020. That number has risen to approximately 6,700 because of the court system's inability to conduct trials during the pandemic and on account of space limitations that stemmed from social distancing in courtrooms.

Significantly, the CJRA includes several time limits designed to move cases with detained defendants to trial more quickly. First, defendants must be released if they have not been indicted within 90 days of being detained. N.J.S.A. 2A:162-22(a)(1)(a). The 90-day clock does not count "excludable time for reasonable delays . . . set forth in subsection b" of the statute. Ibid. Subsection b, in turn, lists thirteen categories of excludable time. The trial judge may extend the 90-day clock by up to 45 days if, on motion of the prosecutor, the court finds that (1) the defendant presents a "substantial and unjustifiable risk" to public safety and no conditions of release "could reasonably address" the risk, and (2) the failure to indict "was not due to unreasonable delay by the prosecutor." Ibid.; R. 3:25-4(b)(2).

Second, defendants must be released if their trial has not "commence[d]" within 180 days of the return or unsealing of the indictment. N.J.S.A. 2A:162-22(a)(2)(a). Under the Act, a trial "commence[s] when the court determines that the parties are present and directs them to proceed to voir dire or to opening argument, or the hearing of any motions that had been reserved for the time of trial." Id. at -22(a)(2)(b)(i). The 180-day clock contains provisions that mirror both exceptions to the 90-day clock. Id. at -22(a)(2)(a).

Finally, the CJRA contains a two-year cap. Defendants shall be released from jail, after a hearing to consider conditions of release, if "the prosecutor is not ready to proceed" two years after the court ordered the defendant detained. Ibid. (emphasis added). The Act considers the State ready if the prosecutor is prepared "to proceed to voir dire or to opening argument, or to the hearing of any motions that had been reserved for the time of trial." Ibid. Only "delays attributable to the" defendant can be excluded from the two-year cap. Ibid.

Rule 3:25-4 echoes and complements the Act, identifying categories that qualify as excludable time attributable to the defendant, setting time limits to resolve certain motions, and directing that the provision to exclude time for good cause "shall be narrowly construed."

A total of seventeen orders were entered in this case; they excluded time under the 180-day clock from March 6, 2020 through April 22, 2022. Three orders

2

were entered by the trial court, excluding eleven days because defense counsel was not available and a total of 218 additional days. The Supreme Court's fourteen omnibus orders excluded a total of 461 days. In October 2021, the State obtained a superseding indictment that added three new charges against Mackroy-Davis stemming from information the State learned from a codefendant in May 2020.

The parties returned to court to arraign Mackroy-Davis on the superseding indictment on November 15, 2021. Over defendant's objection, the court ordered excludable time "due to extenuating circumstances" -- the court's "inability, essentially, to move cases more than one at a time," the "backlog of defendants" since the start of the pandemic, and courtroom unavailability. The following day, the court entered two orders for excludable time, one for 59 days and a second for 159 days. The court also set a trial date of April 22, 2022.

At another status conference on January 3, 2022 -- the date that both parties agree marked the end of the two-year cap -- the court discussed the parties' readiness to proceed to trial and confirmed the April 22 trial date. The State declared it was "trial ready." Defendant moved for leave to appeal, which the Appellate Division denied. The Court granted leave to appeal. 250 N.J. 107 (2022).

**HELD:** *Defendants have the right to be released two years after a judge orders them detained, excluding delays attributable to the defendant, if the prosecutor is not ready to proceed to trial. N.J.S.A. 2A:162-22(a)(2)(a). The statute is silent about what happens if the parties are ready but there are not enough courtrooms or judges to try the case. In addressing that dilemma, the Court attempts to balance the relevant interests in a way that comports with defendants' rights under the CJRA.

*In this case, defendant faces charges for murder, conspiracy, and aggravated assault. Despite multiple delays -- most of which resulted from the pandemic -- his trial has not yet begun. Because the prosecution announced it was ready to proceed to trial at the two-year mark, however, defendant's statutory right to a speedy trial has not been violated. The Court therefore affirms the judgment of the trial court and remands the case for trial with additional instructions.

*The Court also offers guidance on various issues that relate to excludable time under the CJRA as well as the need to schedule more jury trials as soon as practicable.

1. If a defendant is detained beyond the CJRA's two-year cap, not counting delays attributable to the defendant, that defendant is entitled to be released pending trial if the prosecutor is not ready to proceed. N.J.S.A. 2A:162-22(a)(2)(a). Because the State declared it was ready to proceed to trial at the relevant time, the Court does not find a statutory violation of the two-year cap. (pp. 20-21)

3

2.  The Court nevertheless encourages trial judges to create a clearer record than was made in this case regarding the State's readiness to proceed.  First, trial courts should clarify before the date of the two-year cap whether the State will be ready then.  The Court directs trial courts to schedule a hearing approximately 30 days before the two-year cap expires.  At the hearing, the court should ask the State if it will be ready to proceed on the two-year cap date.  Second, because a statement of readiness has significant consequences, a prosecutor's brief comment on the record must convey a great deal:  that discovery is complete at the time the representation is made; that no substantive motions remain to be filed; that the indictment is in final form and no superseding indictment is contemplated, based on information known to the State or that should have been known through the exercise of reasonable diligence; and that the State's witnesses are generally available.  Going forward, a prosecutor's statement of readiness will be understood to encompass each of those elements.  The prosecutor's statement must be made in open court or in writing.  R. 3:25-4(d)(3).  Trial courts can rely on good faith representations from the State and need not inquire about each of the above points.  In their discretion, judges can also require appropriate assurances to support a prosecutor's statement of readiness.  In addition, if a trial date is postponed after the statement of readiness, the trial court can revisit the issue and ask the State to declare once again whether it is ready to proceed.  (pp. 21-23)

3.  The prosecutor's statement of readiness does not end all concerns about a defendant's continued detention.  The overall structure of the CJRA, and section 26 in particular, make clear the Legislature was concerned about lengthy pretrial delays for detained defendants.  Yet a statement of readiness can effectively extend the two-year cap, and a defendant's pretrial detention, if the court is not able to proceed.  Because the statute contemplates that trials of detained defendants should begin as soon as practicable, the Court relies on its supervisory authority to impose measures courts should follow when the parties announce they are ready to proceed on the two-year cap date but no courtroom or judge will be available at that time.  First, the trial court should consult with a supervisory judge who should coordinate trials within a vicinage as directed in this opinion.  Second, if the parties are ready but the trial cannot start before the two-year cap expires, trial judges must schedule conferences at monthly intervals rather than delay a trial for multiple months at a time.  To be clear, this appeal addresses the need for additional time to commence trial because of the COVID-19 pandemic, not more generalized arguments about routine scheduling matters unrelated to a public health crisis.  Third, the Court asks for the cooperation of the attorneys in notifying their respective supervisors when a trial date is fixed to ensure that counsel will be present and the trial will commence as planned.  Finally, if judicial vacancies remain at high levels, it may be necessary to reassign judges from their responsibilities elsewhere in the court system to try criminal cases.  See N.J. Const. art. VI, § 7, ¶ 2.  (pp. 23-26)

4

4.  The Court offers guidance on several additional points.  First, the Court rejects the argument that the trial court had no authority under the CJRA to issue sua sponte orders that excluded time from the speedy trial clock.  Nothing in the statute or the court rules bars judges from issuing orders about the speedy trial clock on their own accord, and the statute logically empowers trial courts to act on their own in certain instances.  The question is not who initiates an order of excludable time; it is whether the order rests on appropriate grounds.  Before an order is entered, the parties should ordinarily have an opportunity to address the merits of the issue.  In this case, the trial court afforded both sides that opportunity.  (pp. 26-28)

5.  As to superseding indictments, the Court notes that the trial court here relied on courtroom unavailability and the pandemic to extend the time to trial, not on the new charges.  But the Court explains that a superseding indictment does not automatically reset the 180-day clock.  N.J.S.A. 2A:162-22(a)(2)(b)(ii) provides that "[t]he return of a superseding indictment . . . shall extend the time for the trial to commence."  And Rule 3:25-4(f) directs trial courts to scrutinize both indictments with care and consider when the information underlying the new charges was available to determine how much additional time should be excluded.  (pp. 28-31)

6.  The Court declines defendant's request to amend Rule 3:25-4(i) and eliminate exclusions of time for interlocutory review of orders excluding time.  To do so would conflict with the CJRA, which states that "[t]he time from the filing to the final disposition of a motion made before trial by the prosecutor or the eligible defendant" "shall be excluded in computing time in which a case shall be indicted or tried."  N.J.S.A. 2A:162-22(b)(1)(c) (emphasis added).  But the Court adopts an expedited approach for motions for leave to appeal an order about speedy trial calculations.  Going forward, the Appellate Division should decide the motion within 5 days.  If the court grants the motion for leave to appeal, it should direct the parties to file briefs -- and transcripts, if necessary -- on an expedited basis, and render a decision within 5 days of getting those materials.  Parties can ask the Court to review the Appellate Division's judgment on an emergent basis.  (pp. 31-33)

7.  Finally, the Court considers defendant's request that the Court "impose an outer-limit of detention" to "save the constitutionality of the CJRA."  That issue is not properly before the Court, and the Court has previously rejected a facial challenge to the CJRA on due process grounds.  See In re Request to Release Certain Pretrial Detainees, 245 N.J. 218, 232 (2021).  The Court explained that "[w]hether the length of detention violates due process . . . 'requires assessment on a case-by-case basis' because due process is a flexible concept that 'does not necessarily set a bright line limit for length of pretrial confinement.'"  Id. at 231.  Defendants may bring individual due process challenges based on the length of their detention and must do so in the first instance before the trial court.  Pretrial Detainees lists a number of relevant considerations to assess such a challenge.  Id. at 232.  (pp. 33-35)

The judgment of the trial court is **AFFIRMED AS MODIFIED**, and the matter is **REMANDED** for further proceedings consistent with this opinion.

**JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in CHIEF JUSTICE RABNER's opinion. JUDGE FUENTES (temporarily assigned) did not participate.**

SUPREME COURT OF NEW JERSEY

A-43 September Term 2021

086626

State of New Jersey,

Plaintiff-Respondent,

v.

Marcus S. Mackroy-Davis,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| April 26, 2022 | June 27, 2022 |

Robin Kay Lord argued the cause for appellant (Law
Offices of Robin Kay Lord, attorneys; Robin Kay Lord
and Monika Mastellone, on the briefs).

Jennifer B. Paszkiewicz, Assistant Prosecutor, argued the
cause for respondent (Scott A. Coffina, Burlington
County Prosecutor, attorney; Jennifer B. Paszkiewicz, of
counsel and on the briefs).

Alexander Shalom argued the cause for amici curiae
American Civil Liberties Union of New Jersey and Public
Defender of New Jersey (American Civil Liberties Union
of New Jersey Foundation, and Joseph E. Krakora, Public
Defender, attorneys; Alexander Shalom, Jeanne
LoCicero, and Elizabeth C. Jarit, Deputy Public
Defender, on the brief).

David White argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; David White, on the brief).

Lauren Bonfiglio, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Acting Attorney General, attorney; Lauren Bonfiglio, of counsel and on the brief).

John McNamara, Jr., Morris County Chief Assistant Prosecutor, argued the cause for amicus curiae County Prosecutors Association of New Jersey (Esther Suarez, President, County Prosecutors Association of New Jersey, attorney; John McNamara, Jr., of counsel and on the brief).

---

CHIEF JUSTICE RABNER delivered the opinion of the Court.

This appeal poses a narrow question:  whether a particular defendant's statutory right to a speedy trial was violated.  The issue, though, raises broader concerns linked to the COVID-19 pandemic.

Foremost among those considerations is that defendants in criminal cases have a right to a speedy trial and a corresponding right not to be held in jail pretrial for lengthy periods of time.  For more than two years, however, there have been far fewer in-person trials because of COVID-19.  Beginning in March 2020, the court system, like the rest of society, could not safely bring large groups of people together for court proceedings in close quarters.  Even though restrictions have loosened and trials have resumed, relatively few

2

courtrooms today can accommodate all the essential parties to a criminal trial with appropriate social distancing.

Those limitations naturally led to an increase in pending cases, and thousands of criminal matters now await trial. To compound the problem, defendants in roughly 6,000 cases await their day in court while in custody. In each of those matters, a judge found the defendant posed a substantial risk of danger, flight, or obstruction and ordered the person detained pretrial.

Defendants have the right to be released two years after a judge orders them detained, excluding delays attributable to the defendant, if the prosecutor is not ready to proceed to trial. N.J.S.A. 2A:162-22(a)(2)(a). The statute is silent about what happens if the parties are ready but there are not enough courtrooms or judges to try the case. As we address that dilemma, we must attempt to balance the relevant interests in a way that comports with defendants' rights under the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26 (CJRA or Act).

In this case, defendant faces charges for murder, conspiracy, and aggravated assault in connection with his alleged role in a fatal drive-by shooting. The trial court ordered him detained in December 2019. Despite multiple delays -- most of which resulted from the pandemic -- his trial has not yet begun. Because the prosecution announced it was ready to proceed to trial

3

at the two-year mark, however, we find that defendant's statutory right to a speedy trial has not been violated. We therefore affirm the judgment of the trial court and remand the case for trial with additional instructions.

We also offer guidance on various issues that relate to excludable time under the CJRA as well as the need to schedule more jury trials as soon as practicable.

I.

Defendant Marcus Mackroy-Davis was arrested on November 11, 2019 in connection with a drive-by shooting in Burlington City the day before. One person was killed as a result of the shooting.

A complaint against Mackroy-Davis charged him with conspiracy to commit murder. The accompanying affidavit of probable cause summarized witness statements, information from surveillance cameras, and an Instagram clip associated with a codefendant's account. The affidavit asserted that Mackroy-Davis drove a car with two passengers, one of whom fired three gunshots into the area where the victim and his friends were standing.

The State moved to detain Mackroy-Davis pending trial. The charge against him -- first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2(a)(1) and 2C:11-3(a)(1) -- carried a presumption of detention. N.J.S.A. 2A:162-19(b). After a hearing, the trial court found that there was probable cause

4

defendant committed the charged offense and that he had failed to rebut the presumption. In addition to the nature and circumstances of the offense, the court relied on the weight of the evidence and defendant's history. The court noted, in particular, three outstanding charges against defendant for which he had failed to appear on eight occasions. The court observed, "[i]f he does not appear . . . for [disorderly persons] charges, how likely is he to attend court for a first-degree offense." Based on the unrebutted presumption of detention and the court's finding that defendant posed a danger to the public and a risk of non-appearance, the court entered an order of detention on December 23, 2019.

On February 13, 2020, a Burlington County grand jury returned a seven-count indictment against Mackroy-Davis and two others. Mackroy-Davis was charged in three of the counts with first-degree murder, N.J.S.A 2C:11-3(a)(1), -3(a)(2), first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2(a)(1), 2C:11-3(a)(1), and fourth-degree obstruction, N.J.S.A. 2C:29-1(a).

Defendant maintains his innocence and has stated he intends to go to trial. At the time of oral argument, his trial had not yet begun. Defendant asserts the delays violate his rights under the CJRA, and he maintains he is entitled to be released from pretrial detention.

II.

The COVID-19 pandemic has had an enormous effect on society since March 2020.  Across the globe, millions have died and taken ill from the virus.  Coronavirus Resource Center, Johns Hopkins Univ. & Med., https://coronavirus.jhu.edu (last visited June 21, 2022).  The pandemic has also upended the personal and professional lives of countless people.

COVID-19 has affected the justice system as well.  Early on, the Judiciary pivoted to virtual proceedings in place of in-person gatherings.  According to the Administrative Office of the Courts (AOC), since mid-March 2020, more than 381,000 virtual court events have taken place involving more than 6 million participants.  Today, the court system operates with a mix of virtual and in-person proceedings, and certain changes will likely extend beyond the pandemic.  See Sup. Ct. of N.J., Future of Court Operations -- Continuation of Both In-Person and Virtual Court Events, at 1 (Nov. 18, 2021 Order).[1]

For the criminal justice system in particular, the consequences of the pandemic have been substantial.  Consistent with guidance from public health officials, the Judiciary for more than a year was unable to summon jurors,

---

[1]  Copies of Court orders, notices, and press releases related to COVID-19 are available on the Judiciary's website at https://www.njcourts.gov/public/covid19.html.

6

witnesses, lawyers, court staff, and the parties for in-person jury trials. As a result, the Court on its own entered fourteen omnibus orders that tolled the clock for the start of criminal trials for a total of 461 days. See COVID-19 Updates, N.J. Cts., https://www.njcourts.gov/public/covid19.html (listing all fourteen omnibus orders); see also N.J.S.A. 2A:162-22(a)(2)(a).

Those developments inevitably led to an increase in the number of pending cases. In March 2020, a large group of defendants already awaited trial on pending charges. With each passing day, more people were arrested and charged with crimes, but for an extended period, most could not be assigned a trial date and have a jury hear their case. Today, according to the AOC, there are approximately 6,000 cases in which defendants are held in custody pursuant to an order of pretrial detention as they await trial. On any given day, hundreds more are in custody as they wait for an initial appearance or detention hearing.

### III.

### A.

We begin with a brief overview of some basic points related to the CJRA. Under the prior system of pretrial release, New Jersey, like most states, relied heavily on cash bail. State v. Robinson, 229 N.J. 44, 52 (2017). The CJRA replaced that approach with a risk-based system that, for the first time,

allowed judges to detain high-risk defendants pretrial.  Id. at 54.  The Act also provided speedy trial deadlines for detained defendants.  Ibid.

Since the Act went into effect on January 1, 2017, most defendants have been released pending trial subject to monitoring by pretrial services officers. N.J.S.A. 2A:162-17, -25(d).  For higher-risk defendants, the State can move for pretrial detention.  Id. at -19(a).  After a hearing, if the court finds by clear and convincing evidence that no combination of conditions of release would reasonably guard against the risk of danger, flight, or obstruction that a defendant poses, the person is held in custody pretrial.  Id. at -18(a)(1).

In recent years, approximately 19 percent of defendants charged by complaint have been ordered detained.  Annual Report to the Governor and the Legislature 2020 at 32 (20.1 percent); Annual Report to the Governor and the Legislature 2019 at 29 (17.6 percent); Annual Report to the Governor and the Legislature 2018 at 36 (19.5 percent).[2]  In tandem with other reform efforts, the pretrial jail population dropped from 8,899 at the start of 2016 to 4,976 at the start of 2020.  Criminal Justice Reform Statistics:  Jan 1 -- Dec. 31, 2020, Chart C, https://www.njcourts.gov/courts/assets/criminal/cjrreport2020.pdf.

---

[2]  Copies of the reports can be found at https://www.njcourts.gov/courts/criminal/reform.html.

According to the AOC, that number has risen to approximately 6,700 because of the court system's inability to conduct trials during the pandemic.

Space limitations have also played a significant role. Twenty or more individuals must be present in the courtroom to conduct a single-defendant trial. When the Judiciary restarted in-person trials in June 2021, with six feet of social distancing in place, few courtrooms throughout the State were large enough to house a criminal trial. See Sup. Ct. of N.J., Resumption of Certain In-Person Jury Trials Effective June 15, 2021; Prioritization of Criminal Trials That Involve Detained Defendants, at 1 (May 11, 2021 Order); Notice -- COVID-19 -- Criminal and Civil Jury Trials -- Public Information and Guidance Pursuant to the Supreme Court's May 11, 2021 Order, at 7 (May 19, 2021). Even with social distancing relaxed to three feet in March 2022, Sup. Ct. of N.J., Conclusion of Masking and Social Distancing Requirements in Judiciary Facilities; Adjustments to Jury and Grand Jury Proceedings (Mar. 9, 2022 Order), many courtrooms still cannot accommodate a criminal trial.

B.

We turn next to the CJRA's timing provisions, which are at the center of this appeal.

The Act includes several time limits designed to move cases with detained defendants to trial more quickly. First, defendants must be released if

9

they have not been indicted within 90 days of being detained.  N.J.S.A. 2A:162-22(a)(1)(a).  The 90-day clock does not count "excludable time for reasonable delays . . . set forth in subsection b" of the statute.  Ibid. Subsection b, in turn, lists thirteen categories of excludable time.  They include (1) "[t]he time from the filing to the final disposition of a motion made before trial by the prosecutor or the eligible defendant," id. at -22(b)(1)(c); (2) "[t]he time resulting from exceptional circumstances including, but not limited to, a natural disaster," id. at -22(b)(1)(f); and (3) "[t]he time for other periods of delay not specifically enumerated if the court finds good cause for the delay," id. at -22(b)(1)(l).

Other bases for excludable time include the time for a competency examination, id. at -22(b)(1)(a); for disposition of an application for pretrial treatment or a supervisory program, id. at -22(b)(1)(b); for a continuance that either the defendant or both parties requested, id. at -22(b)(1)(d); for detention in another jurisdiction, id. at -22(b)(1)(e); for cases designated complex, id. at -22(b)(1)(g); for severance of codefendants, id. at -22(b)(1)(h); for the defendant's failure to appear in court, id. at -22(b)(1)(i); for disqualification or recusal of a judge, id. at -22(b)(1)(j); for defendant's failure to provide discovery, id. at -22(b)(1)(k); and for "[a]ny other time otherwise required by statute, id. at -22(b)(1)(m).

10

The trial judge may extend the 90-day clock by up to 45 days if, on motion of the prosecutor, the court finds that (1) the defendant presents a "substantial and unjustifiable risk" to public safety and no conditions of release "could reasonably address" the risk, and (2) the failure to indict "was not due to unreasonable delay by the prosecutor." Id. at -22(a)(1)(a); R. 3:25-4(b)(2).

Second, defendants must be released if their trial has not "commence[d]" within 180 days of the return or unsealing of the indictment. N.J.S.A. 2A:162-22(a)(2)(a). Under the Act, a trial "commence[s] when the court determines that the parties are present and directs them to proceed to voir dire or to opening argument, or the hearing of any motions that had been reserved for the time of trial." Id. at -22(a)(2)(b)(i).

The 180-day clock contains provisions that mirror both exceptions to the 90-day clock. Excludable time for reasonable delays under subsection b is not counted, and the court may extend the time to trial beyond 180 days if it finds a substantial risk to public safety and if the failure to start trial was not because of unreasonable delay by the prosecutor. Id. at -22(a)(2)(a). In the latter situation, the court may allocate up to 60 days of additional time. R. 3:25-4(c)(4)(B).

Finally, the CJRA contains a two-year cap. Defendants shall be released from jail, after a hearing to consider conditions of release, if "the prosecutor is not ready to proceed" two years after the court ordered the defendant detained. N.J.S.A. 2A:162-22(a)(2)(a) (emphasis added). The Act considers the State ready if the prosecutor is prepared "to proceed to voir dire or to opening argument, or to the hearing of any motions that had been reserved for the time of trial." Ibid. Only "delays attributable to the" defendant can be excluded from the two-year cap. Ibid.

Rule 3:25-4 echoes and complements the Act. It identifies eight of thirteen categories that qualify as excludable time attributable to the defendant. Id. at -4(d)(2). They include motions filed by a defendant, "unless the motion was filed in response to unreasonable actions of the prosecutor," id. at -4(d)(2)(C), and good cause for delay, "but only if the delay resulted from unreasonable acts or omissions of the defendant," id. at -4(d)(2)(H).[3]

The Rule sets time limits to resolve certain motions. See, e.g., R. 3:25-4(b)(2) to (4), -4(c)(2) to (4). It also directs that the provision to exclude time for good cause "shall be narrowly construed." Id. at -4(i)(12).

---

[3] Neither the CJRA nor the Rule provides that a natural disaster can extend the two-year cap. See N.J.S.A. 2A:162-22(b)(1)(f); R. 3:25-4(d)(2), -4(i)(6). At the time the law and the rule were drafted in 2014 and 2016, respectively, very few contemplated the enormity of the current pandemic.

IV.

Against that backdrop, we return to the procedural history of defendant's case.

A total of seventeen orders were entered in this case; they excluded time under the 180-day clock from March 6, 2020 through April 22, 2022. The first order, which the trial court entered on March 11, 2020, excluded eleven days because defense counsel was not available.

In response to the pandemic, the Supreme Court issued fourteen omnibus orders that applied to all criminal cases. In accordance with general guidance and recommendations from the New Jersey Department of Health and the Centers for Disease Control, the orders restricted in-person proceedings throughout the court system. The orders specifically suspended criminal jury trials.

For purposes of the 180-day clock, the omnibus orders excluded the time to commence trial for a total of 461 days -- from March 12, 2020 through June 15, 2021.[4] The orders relied on two bases: "exceptional circumstances," N.J.S.A. 2A:162-22(b)(1)(f), and "good cause for delay," id. at -22(b)(1)(l).

_____

[4] The orders also addressed periods of excludable time for the return of an indictment, which encompassed somewhat different dates. See, e.g., Sup. Ct. of N.J., at 1 (Mar. 19, 2020 Order); Sup. Ct. of N.J., COVID-19 -- Eleventh COVID-19 Omnibus Order, at 3-5 (Mar. 23, 2021 Order).

13

As to the first ground, no party disputes that the COVID-19 pandemic qualifies as a "natural disaster" and thus an "exceptional circumstance" under the CJRA. See id. at -22(b)(1)(f); see also In re Request to Release Certain Pretrial Detainees, 245 N.J. 218, 231 (2021) (discussing the Act's excludable time provisions in the context of a challenge related to COVID-19); N.J. Republican State Comm. v. Murphy, 243 N.J. 574, 580-81 (2020) (finding "that COVID-19 is a true disaster" within the meaning of the N.J. Const. art. VIII, § 2, ¶ 3(e)). As to the second basis -- "good cause for delay" -- the orders at different times rested on the statewide suspension of or limited capacity for jury trials.

The trial court conducted several conferences and entered two additional orders that excluded 218 days. At a case management conference on September 17, 2021, the State asked to extend the period of excludable time through November 15, 2021. The State claimed additional time was needed because the vicinage was conducting "only one trial [at a] time," and both counsel had other trial commitments. Defense counsel argued the State should file a formal application to create a better record from which it might appeal.

The court acknowledged the "exceptional, extraordinary circumstances" that existed and the vicinage's inability "to move as many cases as we might

14

have otherwise." The judge noted the vicinage was attempting "to get to the point of" trying "up to two cases at a time."

Because of the "unfortunate backlog of detained defendants" and understandable concerns about the length of detention, the court instructed the parties to return in two months to address excludable time and for defendant to consider applying for release then. In the interim, the court asked the State to file an application for excludable time. The court also noted that defendant's trial date was then set for January 25, 2022.

The State did not file a motion. On October 21, 2021, it sought and obtained a superseding indictment from a Burlington County grand jury. The indictment added three new charges against Mackroy-Davis -- two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and one count of conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2(a)(1).

The charges stemmed from information the State learned from a codefendant in May 2020. The County Prosecutor, though, elected not to "present murder and other sensitive first-degree cases" to a virtual grand jury and waited to submit the charges to a grand jury in person. In-person grand jury proceedings were able to resume on June 15, 2021. Sup. Ct. of N.J., at 2 (May 11, 2021 Order).

15

The parties returned to court to arraign Mackroy-Davis on the superseding indictment on November 15, 2021.  We discuss the balance of the hearing in greater detail later but note a few points here.  Over defendant's objection, the court ordered excludable time "due to extenuating circumstances" -- the court's "inability, essentially, to move cases more than one at a time," the "backlog of defendants" since the start of the pandemic, and courtroom unavailability.

The following day, the court entered two orders for excludable time which stated, "The court has determined that there are exceptional circumstances due to courtroom unavailability and on account of good cause for the delay, for a public health emergency -- Covid-19."  (citing N.J.S.A. 2A:162-22(b)(1)(f)).  The first order excluded the period from September 17 through November 14, 2021 -- a total of 59 days; the second order excluded the period from November 15, 2021 through April 22, 2022 -- 159 days.  The court also set a trial date of April 22, 2022.[5]

---

[5]  Defendant's trial did not start on that date.  At oral argument before this Court on April 26, 2022, defense counsel explained that she was on trial elsewhere and had recently filed a motion to sever.  Those delays are attributable to defendant and do not count toward the two-year cap.  N.J.S.A. 2A:162-22(a)(2)(a).

At another status conference on January 3, 2022, the court discussed the parties' readiness to proceed to trial. As detailed further below, the State declared it was "trial ready."

Defendant sought to appeal the trial court's orders. He filed an application for permission to file an emergent motion on November 16, 2021, which the Appellate Division denied the following day. It noted defendant could file a motion in the ordinary course, which would be expedited. He then filed a motion for leave to appeal on December 6, 2021, which the Appellate Division denied on December 21, 2021.

We granted defendant's motion for leave to appeal on February 8, 2022. 250 N.J. 107 (2022). We also granted leave to appear as amicus curiae to the Attorney General, the County Prosecutor's Association of New Jersey (CPA), the Association of Criminal Defense Lawyers of New Jersey (ACDL), and the Public Defender and American Civil Liberties Union of New Jersey (ACLU), who submitted a joint brief.

## V.

Defendant contends that trial courts are granting "excessive and unwarranted" amounts of excludable time "in the wake of the COVID-19 pandemic," contrary to the language, purpose, and intent of the CJRA. He argues that the trial court here abused its discretion when it ordered 218 days

17

of excludable time on its own. Defendant claims the court excluded time because of the superseding indictment but conducted no analysis and made no findings to support its ruling. He therefore seeks immediate release from detention.

Defendant maintains that trial courts must strictly and narrowly construe excludable time exceptions, and must not permit indefinite detention beyond the two-year cap. He submits that prosecutors should be required to make a greater showing of readiness to extend the cap by demonstrating that discovery and pretrial motions are complete and that witnesses are available. He also argues that a defendant's appeal of an order of excludable time should not result in more excludable time.

The Public Defender and ACLU echo the concerns defendant has raised. They submit that trial courts "routinely grant excludable time in violation of the CJRA, gutting the time limits of the statute," and that Mackroy-Davis's case exemplifies that problem.

The ACDL contends that trial courts may not grant excludable time sua sponte under the CJRA. To do so, they argue, deprives defendants of a meaningful opportunity to object and violates their due process rights.

The State argues that defendant's and amici's broad-based arguments about excludable time ignore "the highly unfortunate but unavoidable issues

18

created by the COVID-19 pandemic." The State maintains the trial court entered orders of excludable time in response to the extraordinary circumstances the pandemic produced. In particular, the State argues the trial court appropriately based its orders on "exceptional circumstances" and "good cause" within the meaning of the Act -- that is, on courtroom unavailability prompted by COVID-19, and not on the return of a superseding indictment. The State also emphasizes that it stated on the record it was ready to proceed to trial at the two-year mark, as the CJRA requires. In addition, the State maintains that motions for leave to appeal trigger excludable time under the language of the Act.

The Attorney General similarly argues that the trial court properly adjusted the 180-day clock because of exceptional circumstances and good cause; that the two-year clock ends when the prosecution states its readiness for trial; that no enhanced showing of readiness is required; and that a defendant's interlocutory appeal triggers excludable time under the text of the CJRA.

The CPA likewise supports the State's position. It urges the Court to find that "delays of criminal trials were rendered necessary by concerns for the spread of the novel coronavirus," and that "[d]elays engendered by the pandemic are properly considered to be excludable time" under the CJRA.

19

The CPA also submits that prosecutors satisfy their obligation relating to the two-year cap with a good faith declaration that the State is ready for trial.

## VI.

The pivotal issue in this appeal is whether defendant's statutory right to a speedy trial has been violated. We therefore begin our analysis there.

## A.

To repeat, if a defendant is detained beyond the statute's two-year cap, not counting delays attributable to the defendant, that defendant is entitled to be released pending trial if the prosecutor is not ready to proceed. N.J.S.A. 2A:162-22(a)(2)(a). Because the State declared it was ready to proceed to trial at the relevant time, we do not find a violation under the Act.

Both parties agree that January 3, 2022, marked the end of the two-year cap. At a brief conference that day, the trial court confirmed that defendant's trial was set to start on April 22, 2022.

During the conference, the State twice stated it was ready to proceed. The first time, the court asked, "Is the State ready? The 22nd, that's of April." The State responded, "The April date, yes, the State's trial ready." Shortly after, the court posed the question more generally: "The State's ready to proceed?" The prosecutor answered, "Yes, your Honor."

The hearing ended immediately afterward.  Defense counsel did not ask the State to clarify whether it was ready to proceed to trial on the day of the conference -- the actual date of the two-year cap.  And the trial court asked no further questions.

We encourage trial judges to create a clearer record -- consistent with the following guidance -- for the benefit of the parties and to facilitate appellate review.  A fair reading of the transcript in this case, however, does not suggest the State declared it would not be prepared until April 22, 2022.  Because the State represented it was ready to proceed at the relevant time, we find no statutory violation of the two-year cap.

B.

We add the following relating to the prosecution's statement of readiness under N.J.S.A. 2A:162-22(a)(2)(a).

First, trial courts should clarify <u>before</u> the date of the two-year cap whether the State will be ready then.  Relying on the Court's supervisory authority, <u>N.J. Const.</u> art. VI, § 2, ¶ 3, we direct trial courts to schedule a hearing approximately 30 days before the two-year cap expires.  At the hearing, the court should ask the State if it will be ready to proceed on the two-year cap date.

21

Second, a statement of readiness has significant consequences. It can deprive a defendant of liberty beyond the two-year mark, at a time the individual is presumed innocent. To sustain such an outcome, a prosecutor's brief comment on the record must convey a great deal: that discovery is complete at the time the representation is made;[6] that no substantive motions remain to be filed; that the indictment is in final form and no superseding indictment is contemplated, based on information known to the State or that should have been known through the exercise of reasonable diligence; and that the State's witnesses are generally available.

Going forward, a prosecutor's statement of readiness will be understood to encompass each of those elements. The prosecutor's statement must be made in open court or in writing. R. 3:25-4(d)(3). Trial courts can rely on good faith representations from the State and need not inquire about each of the above points. In their discretion, judges can also "require appropriate assurances to support a prosecutor's statement of readiness." State v. D.F.W., 468 N.J. Super. 422, 443 (App. Div. 2021). In addition, if a trial date is

---

[6] We recognize the State has "a continuing duty to provide discovery" and may develop and disclose additional discovery after stating it is ready to proceed. R. 3:13-3(f); State in Int. of N.H., 226 N.J. 242, 257 (2016) (noting "the State's continuing discovery obligation" under Rule 3:13-3(f)). Such disclosures do not conflict with a statement of readiness.

22

postponed after the statement of readiness, the trial court can revisit the issue and ask the State to declare once again whether it is ready to proceed. Ibid.

## C.

The prosecutor's statement of readiness does not end all concerns about a defendant's continued detention. The overall structure of the CJRA, and section 26 in particular, make clear the Legislature was concerned about lengthy pretrial delays for detained defendants. Yet a statement of readiness can effectively extend the two-year cap, and a defendant's pretrial detention, if the court is not able to proceed. See id. at 427.

As noted earlier, the law does not specifically address what should happen if the parties are ready to proceed but there are not enough courtrooms or judges to start the trial. Indeed, the plain language of the statute "conditions relief on a prosecutor's lack of readiness to proceed (and not the availability of the court to try the case)." Id. at 441. In this appeal, the trial court explained in November 2021 that, on account of the pandemic, it was unable "to move cases more than one at a time" because of the backlog of cases and the unavailability of courtrooms. The court then set a trial date five months into the future.

Because the statute contemplates that trials of detained defendants should begin as soon as practicable, we further rely on our supervisory

23

authority to impose the following measures when the parties announce they are ready to proceed on the two-year cap date but no courtroom or judge will be available at that time.

First, we recognize there are not enough available courtrooms today to address the substantial number of pending criminal cases because of COVID-19 and its continuing effects on the justice system. It is also unlikely that a single trial judge will have a full understanding of the overall situation in a vicinage.

Therefore, if the State announces at the hearing described in the previous section that it is ready to proceed on the two-year cap date, and the defendant is also prepared but no courtroom or judge will be available for reasons related to the pandemic, the trial court must consult with a supervisory judge. In each vicinage, either the Assignment Judge or Criminal Presiding Judge should serve as the point person to coordinate trial dates from a vicinage-wide perspective and help schedule individual trials as soon as practicable. In scheduling trial dates, the supervisory judge and trial judges should take into account the age of a case, the seriousness of the charge, and the availability of counsel, among other relevant considerations. To be clear, cases with detained defendants are to receive priority.

24

Second, if the parties are ready but the trial cannot start before the two-year cap expires, trial judges should schedule conferences at monthly intervals rather than delay a trial for multiple months at a time. They should consult with the supervisory judge about courtroom availability before those periodic conferences and make an appropriate record about the need for any further delays at the hearing. As noted earlier, trial judges may but are not required to inquire again about the State's readiness at later conferences. See id. at 443.

To be clear, this appeal addresses the need for additional time to commence trial because of the COVID-19 pandemic, not more generalized arguments about routine scheduling matters unrelated to a public health crisis. In addition, the above requirements -- to consult with a supervisory judge and schedule monthly conferences -- may be relaxed as the public health situation continues to evolve. But coordination within each vicinage will still be needed for a period of time even when three feet of social distancing is no longer necessary for jury trials. The backlog the pandemic created over the course of two years cannot be resolved in a matter of months.

Third, we ask assistant prosecutors and public defenders to notify their respective supervisors when a trial date is fixed to ensure that counsel will be present and the trial will commence as planned. We identify the Public Defender's Office because it is responsible for the defense in a large majority

of criminal cases.  The pending situation will depend on the cooperation of the private bar as well.

Trial judges and lawyers alike know that realistic trial dates help resolve cases.  Knowing that a trial will begin soon causes parties to reexamine the strengths and weaknesses of their case and consider alternatives to trial.  To effectively address the existing backlog, it is essential that trial teams be given more realistic trial dates -- and that they be able to proceed to trial on those dates.  Once again, that will require coordination across the criminal justice system.

Finally, when a trial cannot start at the two-year cap, a detained defendant's liberty is at stake.  As a result, if judicial vacancies remain at high levels, it may be necessary to reassign judges from their responsibilities elsewhere in the court system to try criminal cases.  See N.J. Const. art. VI, § 7, ¶ 2.

## VII.

The proceedings in this case raise a number of other issues.  Although we find no statutory speedy trial violation, we address several points to offer additional guidance.

26

A.

*Sua sponte orders.* Defendant argues that the trial court had no authority under the CJRA to issue sua sponte orders that excluded time from the speedy trial clock. Nothing in the statute or the court rules, however, bars judges from issuing orders about the speedy trial clock on their own accord.

This Court, for example, entered fourteen orders that excluded time from the 180-day clock because of COVID-19 and its consequences. As noted earlier, the orders were based on "exceptional circumstances," which expressly encompass "natural disaster[s]," see N.J.S.A. 2A:162-22(b)(1)(f), and "good cause for the delay," in light of the suspension of and limited capacity for jury trials statewide, see id. at -22(b)(1)(l). Defendant does not challenge the validity of those orders, which the Court entered on its own.

The statute logically empowers trial courts to act on their own in certain instances. To be sure, a few provisions condition excludable time on a party making an application. See, e.g., id. at -22(b)(1)(c) (the filing of pretrial motions); id. at -22(b)(1)(d) (a request for a continuance); id. at -22(b)(1)(g) (a request to designate a case as a complex matter). But other sections of the law do not depend on a party's motion or request. See, e.g., id. at -22(b)(1)(a) (competency examination and hearing); id. at -22(b)(1)(e) (detention in another jurisdiction); id. at -22(b)(1)(h) (severance of codefendants that

27

permits only one trial to commence); id. at -22(b)(1)(i) (failure to appear); id. at -22(b)(i)(j) (disqualification or recusal of a judge); id. at -22(b)(1)(k) (failure to provide discovery).  Exceptional circumstances and good cause -- the bases the trial court relied on here -- fall in the latter category.  See id. at -22(b)(1)(f) & (l).

The question is not who initiates an order of excludable time; it is whether the order rests on appropriate grounds.  Before an order is entered, the parties should ordinarily have an opportunity to address the merits of the issue.  In this case, the trial court afforded both sides that opportunity.[7]

B.

*Superseding indictments*.  As noted earlier, at the November 15, 2021 conference, the trial court relied on courtroom unavailability and the pandemic to exclude time from the 180-day clock.  At the hearing, the parties also discussed the superseding indictment returned on October 21, 2021 -- twenty months after the original indictment.

---

[7] The ACDL, as amicus, claims the trial court's sua sponte exclusion of time violated defendant's due process rights by denying him notice and an opportunity to be heard -- an argument defendant has not made.  The Court ordinarily declines to consider arguments raised only by amici.  State v. J.L.G., 234 N.J. 265, 280 (2018); State v. J.R., 227 N.J. 393, 421 (2017).  In any event, the trial court announced its intention on the record and allowed the parties to comment before it entered two orders the following day.

At the time, the State submitted that the CJRA "does allow for superseding indictments to get basically 180 days to restart the clock." Defendant objected, asked the State to make a formal application, and observed that the new charges were based on a statement a codefendant made in May 2020. In response, the assistant prosecutor explained the Burlington County Prosecutor's Office took the position that it would not present "murder cases or first-degree cases" to a virtual grand jury.[8]

Multiple pages in the hearing transcript address the effect of the superseding indictment, but the trial court's ruling neither referred to nor relied on the new charges. The court instead relied on courtroom unavailability and the pandemic to extend the time to trial.[9] Once again, a clear record of the specific grounds for excludable time -- at the hearing and in written orders -- will best serve the parties and enable appellate review.

---

[8] Because of the pandemic, the Court temporarily suspended the use of in-person grand juries in March 2020 and authorized the use of virtual grand juries two months later. See Sup. Ct. of N.J., at 1 (Mar. 19, 2020 Order); Sup. Ct. of N.J., at 2-3 (May 14, 2020 Order).

[9] Defendant properly points out that the court was not permitted to extend the two-year clock beyond his January 3, 2022 release date for reasons not attributable to the defendant. To the extent the trial court's second November 2021 order incorrectly extended the two-year date in that manner, any error was cured by the prosecutor's statement of readiness.

Defendant here correctly argued that a superseding indictment does not automatically reset the 180-day clock. The CJRA provides that "[t]he return of a superseding indictment against the eligible defendant shall extend the time for the trial to commence." N.J.S.A. 2A:162-22(a)(2)(b)(ii). Rule 3:25-4(f) provides additional guidance. It directs the court to

> schedule the trial to commence as soon as reasonably practicable taking into consideration the nature and extent of differences between the superseded and superseding indictments, including the degree to which the superseding indictment is based on information that was available at the time of the original indictment or that could have been obtained through reasonably diligent efforts at the time of the original indictment.

Under the plain language of the Rule, to determine how much additional time should be excluded, trial courts should scrutinize both indictments with care and consider when the information underlying the new charges was available. Beyond that, courts may require the State to explain how the new charges affect its ability to prepare for trial and present its case. See D.F.W., 468 N.J. Super. at 436; see also United States v. Andrews, 790 F.2d 803, 808-09 (10th Cir. 1986) (noting that superseding charges that "merely . . . 'gild[]' the initial charge" do not provide a basis for additional time under the federal Speedy Trial Act). A prosecutor's decision not to present an indictment to a virtual grand jury is not a basis to extend the time for a trial to start under the

30

CJRA. See State v. Vega-Larregui, 246 N.J. 94, 104, 134 (2021) (rejecting challenges to the use of virtual grand juries).

C.

*Motions for Leave to Appeal.* Defendant also argues that an appeal of a trial court's order excluding time should not result in yet more excludable time. We recognize the dilemma defendants face: to challenge an arguably flawed ruling that a defendant has not gotten a speedy trial can itself delay the trial date. Defendant therefore asks the Court to amend Rule 3:25-4(i) and eliminate exclusions of time for interlocutory review of orders excluding time.

The CJRA states that "[t]he time from the filing to the final disposition of a motion made before trial by the prosecutor or the eligible defendant" "shall be excluded in computing time in which a case shall be indicted or tried." N.J.S.A. 2A:162-22(b)(1)(c) (emphasis added). Motions for leave to appeal an order excluding time qualify as "motions" under the CJRA, and the statute provides no exception for them. State v. Washington, 453 N.J. Super. 164, 203 (App. Div. 2018) (citing the statute and a recommendation contained in the 2014 report of the Supreme Court's Joint Committee on Criminal Justice). We therefore decline defendant's request to craft a rule that would conflict with the statute.

31

To avoid delays, we note that existing rules place limits on how much time can be excluded under the CJRA to resolve a motion before the trial court. See R. 3:25-4(i)(3)(A) to (C); R. 3:10-2(f). Briefing, argument, and any evidentiary hearing must "be completed promptly but in no event later than 60 days after the filing of the notice of motion, unless the court finds good cause to extend the time . . . to complete the record." R. 3:10-2(f); see also R. 3:25-4(i)(3)(A). In addition, "[u]nless the court reserves its decision until the time of trial," it must "decide the motion within 30 days after the record is complete" absent "extraordinary circumstances." R. 3:25-4(i)(3)(B). "[N]o more than an additional 30 days shall be excluded." Ibid.

We adopt a similar but more expedited approach for motions for leave to appeal an order about speedy trial calculations. Relying on our supervisory authority, N.J. Const. art. VI, § 2, ¶ 3, we call on the Appellate Division to address motions for leave to appeal such orders on an expedited basis.[10] To that end, the Appellate Division should decide the motion within 5 days. If the court grants the motion for leave to appeal, it should direct the parties to file

---

[10] We recognize that the Appellate Division, in its order denying defendant's application to file an emergent motion, noted that motions for leave to appeal related to pretrial detention "are already expedited."

briefs -- and transcripts, if necessary -- on an expedited basis, and render a decision within 5 days of getting those materials.[11]

Parties can ask this Court to review the Appellate Division's judgment on an emergent basis.

## VIII.

Finally, defendant argues that indefinite detention beyond the two-year cap because of the pandemic violates due process. He urges the Court to "impose an outer-limit of detention" to "save the constitutionality of the CJRA." He proposes the following bright-line rule: Defendants must be released on electronic monitoring or home detention 30 days after their two-year release date if they are charged with first- or second-degree non-violent offenses; after 60 days if they are charged with first- or second-degree violent offenses; and at the two-year mark in all other cases.

Defendant did not raise that argument before the trial court or in his motion for leave to appeal. It is therefore not properly before the Court. See

---

[11] If a litigant abuses the above process by filing repetitive motions that demonstrate "a pattern of frivolous litigation," the Presiding Judge for Administration of the Appellate Division can enter an order consistent with Rosenblum v. Borough of Closter to control the practice and curtail "harassing and vexatious" motions. 333 N.J. Super. 385, 387, 391 (App. Div. 2000). Such orders must be entered with caution to avoid impinging on a defendant's "fundamental right of . . . access to the courts." D'Amore v. D'Amore, 186 N.J. Super. 525, 530 (App. Div. 1982); see also Zehl v. City of Elizabeth Bd. of Educ., 426 N.J. Super. 129, 139-40 (App. Div. 2012).

33

State v. Lawless, 214 N.J. 594, 605 n.2 (2013); see also State v. Cabbell, 207 N.J. 311, 327 n.10 (2011) (declining to consider an argument first raised in a supplemental brief to the Court); Hirsch v. State Bd. of Med. Exam'rs, 128 N.J. 160, 161 (1992) (declining to address a claim presented after the Court granted a petition for certification).

In addition, we previously rejected a facial challenge to the CJRA on due process grounds in Pretrial Detainees. 245 N.J. at 232. Defendants argued that prolonged pretrial detention during the pandemic "would render the Act punitive, rather than regulatory." Id. at 230. The Court disagreed and found "that the pandemic, along with the accompanying suspension of in-person criminal jury trials," had not "transformed the CJRA's overall approach to pretrial detention into a punitive scheme." Id. at 232.

Contrary to defendant's position here, the Court explained that "[w]hether the length of detention violates due process . . . 'requires assessment on a case-by-case basis' because due process is a flexible concept that 'does not necessarily set a bright line limit for length of pretrial confinement.'" Id. at 231 (quoting United States v. Orena, 986 F.2d 628, 630 (2d Cir. 1993)); see also United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986) ("Because due process is a flexible concept, arbitrary lines should not be

34

drawn regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial.").

Defendants may bring individual due process challenges based on the length of their detention. Pretrial Detainees, 245 N.J. at 232. They "must do so in the first instance before the trial court." D.F.W., 468 N.J. Super. at 445. Pretrial Detainees lists a number of relevant considerations to assess such a challenge. 245 N.J. at 232 (discussing Accetturo, 783 F.2d at 388).

IX.

For those reasons, we affirm the judgment of the trial court as modified. We also remand the case to the trial court for further proceedings in accordance with the procedures outlined in section VI.C.


JUSTICES ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in CHIEF JUSTICE RABNER's opinion. JUDGE FUENTES (temporarily assigned) did not participate.